THE HONORABLE JAMES L. ROBART

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| In re OUTERWALL INC., et al. STOCKHOLDER LITIGATION | Master File No. 2:16-cv-01275-JLR |
| This Document Relates To: ALL ACTIONS. | CLASS ACTION |
| | MARK RUDD'S MOTION TO AMEND DKT. NO. 7 AND FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD PLAINTIFF'S SELECTION OF COUNSEL PURSUANT TO THE PSLRA |
| | **NOTE ON MOTION CALENDAR: November 14, 2016** |
| | **ORAL ARGUMENT REQUESTED** |

1199892_1

MOTION TO AMEND DKT. NO. 7 AND FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL (2:16-cv-01275-JLR)

STRITMATTER KESSLER WHELAN KOEHLER MOORE KAHLER
3600 15th Avenue West, Suite 300, Seattle, WA 98119
Telephone: 206/448-1777 • Fax: 206/728-2131

**MOTION**

Mark Rudd will, and hereby does, move this Court pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA") for an order: (1) amending the Stipulation and Order Consolidating Related Cases (Dkt. No. 7) ("Stipulation"); (2) appointing Mr. Rudd as lead plaintiff; and (2) approving his selection of Robbins Geller Rudman & Dowd LLP as lead counsel.[1]

**MEMORANDUM OF LAW**

## I. INTRODUCTION

Five consolidated actions are pending in this District on behalf of Outerwall Inc. ("Outerwall" or the "Company") shareholders alleging violations of the Securities Exchange Act of 1934 (the "1934 Act") and/or breach of fiduciary duty in connection with the sale of Outerwall to affiliates of Apollo Global Management VIII, L.P. (the "Transaction").[2] In securities class actions, the PSLRA provides that within 90 days after publication of the statutorily required notice, the Court "shall consider any motion made by a purported class member" and "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. §78u-4(a)(3)(B)(i). Mr. Rudd respectfully submits that he should be appointed as lead plaintiff because he: (1) timely filed this Motion; (2) to his counsel's knowledge, has the largest financial interest in the relief sought by the class; and (3) will fairly and adequately represent the interests of the class. *See* 15 U.S.C. §78u-4(a)(3)(B)(iii). In addition, ¶¶6-7 of the Stipulation should be amended as the Order was prematurely entered before the statutory period expired (and, in fact, does not mention the PSLRA at

---

[1] As used herein, the term "class" is putative and intended solely to conform to the PSLRA's statutory language which provides the motion procedures for "each private action arising under [the Securities Exchange Act of 1934] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(1). The term "class" as used herein does not indicate that a class action has already been certified or otherwise authorized by this Court. If appointed as lead plaintiff, Mr. Rudd will move the Court at the appropriate time for class certification pursuant to Rule 23. *See Elliott v. Drugstore.com, Inc.*, No. 2:04-CV-01642-RSM, slip op. (W.D. Wash. Oct. 8, 2004) (Martinez, J.).

[2] The Court consolidated the five actions on September 28, 2016. *See* Dkt. No. 7.

STRITMATTER KESSLER WHELAN KOEHLER MOORE KAHLER
3600 15th Avenue West, Suite 300, Seattle, WA 98119
Telephone: 206/448-1777 • Fax: 206/728-2131

all). Finally, Mr. Rudd's selection of Robbins Geller as lead counsel for the class should be approved. *See* 15 U.S.C. §78u-4(a)(3)(B)(v).

## II. PROCEDURAL HISTORY

The low-numbered action, *Abbas v. Outerwall Inc.*, No. 2:16-cv-1275, was filed on August 12, 2016. *See* Dkt. No. 1. Thereafter, four similar actions were filed by other plaintiffs.[3] On August 26, 2016, Mallinger's counsel issued a PSLRA notice to investors informing them of the right to seek appointment as lead plaintiff by October 25, 2016.[4] Four days later, Abbas' counsel issued another notice, confusingly informing investors that the deadline to seek appointment was 60 days from September 1, or October 31, 2016. Moore Decl., Ex. 2.

Before the statutory sixty-day period expired, counsel for the five named plaintiffs and defendants filed a Stipulation –which the Court signed – designating WeissLaw LLP as Lead Counsel and Breskin Johnson & Townsend PLLC as liaison counsel. *See* Dkt. No. 7 at ¶¶6-7. The Stipulation expressly provides that it is "without prejudice to any other rights that any party may have." *Id.* at ¶8. Notably, the Stipulation did not mention the PSLRA or its mandatory requirements. *Id.*

## III. FACTUAL BACKGROUND

The Company's core offerings in automated retail include its Redbox entertainment rental and purchase kiosk business, its Coinstar coin to cash conversion kiosk business, and its ecoATM electronic device sale kiosk business. In 2013, the Company changed its name from Coinstar, Inc. to Outerwall. Outerwall is publicly traded on the NASDAQ under the ticker symbol "OUTR."

---

3 *See Baumgartner v. Outerwall Inc.*, No. 2:16-cv-01281 (filed Aug. 15, 2016); *Hunter v. Outerwall, Inc.*, No. 2:16-cv-01285 (filed Aug. 16, 2016); *Mallinger v. Outerwall, Inc.*, No. 2:16-cv-01316 (filed Aug. 19, 2016); and *Filippov v. Outerwall, Inc.*, No. 1:16-cv-01329 (filed Aug. 23, 2016).

4 *See* Ex. 1 attached to the Declaration of Brad J. Moore in Support of Mark Rudd's Motion to Amend Dkt. No. 7 and for Appointment as Lead Plaintiff and Approval of Lead Plaintiff's Selection of Lead Counsel Pursuant to the PSLRA ("Moore Decl."), filed concurrently herewith.

STRITMATTER KESSLER WHELAN KOEHLER MOORE KAHLER
3600 15th Avenue West, Suite 300, Seattle, WA 98119
Telephone: 206/448-1777 • Fax: 206/728-2131

Over the last several years, the Company was approached by and engaged in informal communications with various third parties interested in strategic opportunities with the Company. Such discussions included preliminary discussions with representatives of Apollo in 2014, 2015 and January 2016 regarding a potential sale of the Company. In late 2015, the Company's stock price began to decline as the Company revised its guidance to reflect decreasing revenue from Redbox. Following the filing of an 8-K on December 7, 2015, the stock price dropped from $58.06 to $39.24 per share over the next five trading days. After its financial performance did not improve, the Company issued 2015 financials and guidance for 2016 on February 4, 2016 that led to a decline in the stock price from $32.69 to $25.83 per share over the next five trading days. On February 8, 2016, Engaged Capital, LLC filed a Schedule 13D and disclosed its beneficial ownership of 14% of the then-outstanding shares of the Company's common stock and its potential interest in taking certain actions at a future date regarding its investment, which could include proposing a potential sale of the Company. On February 18, 2016, Engaged Capital filed an amended Schedule 13D that included a letter and presentation sent to the Board outlining Engaged Capital's concerns about the Company and recommending that the Company take certain actions, including retaining financial advisors to begin a sales process with the goal of taking the Company private.

On March 14, 2016, the Company publicly announced the initiation of a strategic process and an increased quarterly dividend. On July 25, 2016, Outerwall and Apollo issued a joint press release announcing that they had entered into an Agreement and Plan of Merger dated July 24, 2016 (the "Merger Agreement") to sell Outerwall to Apollo. Subject to the terms of the Merger Agreement, on August 5, 2016, an affiliate of Outerwall commenced a tender offer (the "Offer") to purchase all of the outstanding shares of Outerwall common stock for $52.00 in cash for each share of Outerwall owned (the "Offer Price"). The merger is valued at approximately $1.6 billion. The Offer expired on September 22, 2016.

The complaints allege that the merger was the result of an unfair process that provided the Company's stockholders with inadequate consideration and that stemmed not from the Board's

STRITMATTER KESSLER WHELAN KOEHLER MOORE KAHLER
3600 15th Avenue West, Suite 300, Seattle, WA 98119
Telephone: 206/448-1777 • Fax: 206/728-2131

efforts to maximize stockholder value, but rather from the Board members' desire to avoid a proxy contest with an activist investor (Engaged Capital) that could have resulted in their potential ouster from the Board. In fact, Outerwall and Apollo announced the merger just as the Company began to enjoy the results of a process initiated to improve its financial results. The inadequacy of the Offer Price is evidenced by the fact that as recently as July 19, 2016, an analyst with B. Riley & Co. set a $58.00 per share price target for the Company – a $6.00 premium to the Offer Price. Further, Outerwall stock traded above the Offer Price as recently as December 7, 2015, when it traded as high as $56.75 per share. Indeed, the Company's stock traded as high as $81.77 per share on July 22, 2015 – just over a year before the merger was announced.

Furthermore, the Board agreed to lock up the deal with a number of coercive deal protection devices in the Merger Agreement, including: (i) a "no-solicitation" clause that prevented the Company from soliciting, and subject to minimal exceptions, from providing nonpublic information to potential alternate bidders; (ii) an "information rights" provision that required Outerwall to provide Apollo with the identity of any competing bidder and all material terms and conditions of such a proposal; (iii) "matching rights" that allowed Apollo three business days to match any superior offer, plus an additional two business days following a material amendment to the terms and conditions of a superior offer or the submission of a new offer; (iv) a "no-waiver" provision that restricted the Company and its subsidiaries from waiving, terminating, modifying or failing to enforce any material provision of any confidentiality or similar agreement to which Outerwall or any of its subsidiaries was a party; and (v) a provision requiring Outerwall to pay a termination fee of $26.9 million if it decided to pursue a competing bid. The collective effect of these provisions was to strongly deter any potential post-deal market check.

Finally, compounding the unfairness of the merger, on August 5, 2016, Outerwall filed a Solicitation/Recommendation Statement on Schedule 14D-9 (the "Recommendation Statement") with the U.S. Securities and Exchange Commission. The Recommendation Statement, which recommended that Outerwall stockholders tender their shares pursuant to the terms of the Merger

STRITMATTER KESSLER WHELAN KOEHLER MOORE KAHLER
3600 15th Avenue West, Suite 300, Seattle, WA 98119
Telephone: 206/448-1777 • Fax: 206/728-2131

Agreement, omitted or misrepresented material information concerning, among other things: (i) Outerwall's financial projections, relied upon by Outerwall's financial advisor, Morgan Stanley & Co. LLC ("Morgan Stanley"); (ii) the data and inputs underlying the financial valuation exercises that purportedly supported the so-called "fairness opinion" provided by Morgan Stanley; and (iii) the background of the merger. The failure to adequately disclose such material information constitutes violations of §14 and §20(a) of the 1934 Act, as stockholders needed such information to make a fully-informed decision regarding whether to tender their shares in connection with the merger.

The complaints also allege that Outerwall insiders were the primary beneficiaries of the merger, not the Company's public stockholders. By ensuring the sale of the Company and heeding Engaged Capital's demand that the Board undertake a sales process, the Board members not only saved themselves from the professional embarrassment and severe reputational damage of having control of the Board wrested away as a result of a proxy battle, but they secured unique benefits from the merger not available to plaintiff and the public stockholders of Outerwall.

Indeed, while Outerwall's public stockholders were cashed out for an inadequate price and foreclosed from participating in the future growth of Outerwall, the Company's directors and officers achieved a substantial payday in connection with the merger. Under Section 2.3 of the Merger Agreement, upon consummation of the merger, Outerwall's directors and officers were to receive cash payments for all outstanding stock options, restricted stock awards and company performance awards, whether or not vested, in amounts equal to the Offer Price – an opportunity that would not otherwise be available. The table below identifies the value the Company's named executive officers received in connection with the merger for outstanding and unvested Outerwall equity awards:

STRITMATTER KESSLER WHELAN KOEHLER MOORE KAHLER
3600 15th Avenue West, Suite 300, Seattle, WA 98119
Telephone: 206/448-1777 • Fax: 206/728-2131

| Name | Stock Options ($) | Restricted Stock ($) | Dividends or Dividend Equivalents ($) |
|---|---|---|---|
| Erik E. Prusch | — | 9,498,060 | 184,720 |
| Nora M. Denzel | — | 135,252 | — |
| Galen C. Smith | — | 2,844,296 | 43,181 |
| Donald R. Rench | — | 2,054,936 | 33,585 |
| James H. Gaherity | — | 1,231,984 | 18,752 |
| David D. Maquera | — | 953,836 | 15,969 |

Further, defendant Prusch and certain Outerwall executive officers received millions of dollars more in severance payments and other benefits in connection with the merger. Notably, defendant Prusch received over $13.63 million in connection with the merger. The merger-related compensation defendant Prusch and five other named executive officers received is set forth below:

| Name (1) | Cash ($) (2) | Equity ($) (3) | Perquisites/ Benefits ($) (4) | Other ($) | Total ($) |
|---|---|---|---|---|---|
| Erik E. Prusch | 3,919,315 | 9,682,780 | 36,227 | — | 13,638,322 |
| Nora M. Denzel | — | 135,252 | — | — | 135,252 |
| Galen C. Smith | 739,858 | 2,887,477 | 22,831 | — | 3,650,166 |
| Donald R. Rench | 597,569 | 2,088,521 | 22,831 | — | 2,708,921 |
| James H. Gaherity | 452,121 | 1,250,736 | 24,151 | — | 1,727,008 |
| David D. Maquera | 580,164 | 969,805 | 24,151 | — | 1,574,121 |

In addition, Outerwall's executive officers may have secured employment following consummation of the merger, as the joint press release stated: "We look forward to working with Outerwall's talented and dedicated team to continue the business's strong heritage of growth and innovation."

Instead of attempting to negotiate an agreement reflecting the best consideration reasonably available for the Outerwall stockholders they were duty-bound to serve, the Board members disloyally placed their own interests first, and tailored the terms and conditions of the merger to meet their own needs and objectives. The Board's effort to advance its members' and officers' personal interests at the expense of the Company's public stockholders resulted in the inadequate merger being presented to the stockholders at an untenable and inadequate price. Therefore, while Outerwall's public stockholders have lost control of the Company for an unfair price, certain Company insiders benefited substantially upon the merger's consummation.

STRITMATTER KESSLER WHELAN KOEHLER MOORE KAHLER
3600 15th Avenue West, Suite 300, Seattle, WA 98119
Telephone: 206/448-1777 • Fax: 206/728-2131

In sum, the complaints allege that the flawed and conflicted sales process resulted in an unfair price for Outerwall's public shareholders and violations of the 1934 Act. The Offer expired on September 22, 2016 and the merger has been completed.

## IV. ARGUMENT

### A. The Stipulation and Order Consolidating Related Cases Should Be Amended

The PSLRA formalized the procedure for selection of the Lead Plaintiff and approval of the Lead Plaintiff's selection of lead counsel in securities class actions. In this regard, the PSLRA provides that the Court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. §78u-4(a)(3)(B)(i). Thereafter, the PSLRA provides that the "most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. §78u-4(a)(3)(B)(v). As the Ninth Circuit has emphasized, "[t]his provision clearly identifies the most adequate plaintiff as the actor that 'select[s] and retain[s]' class counsel." *In re Cohen*, 586 F.3d 703, 709 (9th Cir. 2009) (citation omitted).

The Court's entry of the Stipulation designating WeissLaw LLP as Lead Counsel and Breskin Johnson & Townsend PLLC as liaison counsel did not mention the PSLRA at all. And, neither firm was selected by a lead plaintiff appointed pursuant to the PSLRA. As such, ¶¶6-7 of the Stipulation should be amended.

### B. Mr. Rudd Should Be Appointed as Lead Plaintiff

The PSLRA establishes the procedure for the appointment of a lead plaintiff in "each private action arising under [the 1934 Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(1); *see also* 15 U.S.C. §78u-4(a)(3)(B)(i). First, the pendency of the action must be publicized in a widely circulated national business-oriented publication or wire service not later than 20 days after filing of the first complaint. 15 U.S.C. §78u-4(a)(3)(A)(i). Next, the PSLRA provides that the court shall adopt a presumption that the most adequate plaintiff is the person or group of persons that –

1199892_1
MOTION TO AMEND DKT. NO. 7 AND FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL (2:16-cv-01275-JLR)

STRITMATTER KESSLER WHELAN KOEHLER MOORE KAHLER
3600 15th Avenue West, Suite 300, Seattle, WA 98119
Telephone: 206/448-1777 • Fax: 206/728-2131

- 7 -

(aa) has either filed the complaint or made a motion in response to a notice . . .;

(bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. §78u-4(a)(3)(B)(iii); *In re Cavanaugh*, 306 F.3d 726 (9th Cir. 2002). Mr. Rudd meets each of these requirements and should therefore be appointed as Lead Plaintiff.

**1. This Motion Is Timely**

The notice published by counsel in the *Mallinger* action on August 26, 2016 advised putative class members of the pendency of the action, the claims asserted therein and the right to move the Court to be appointed as lead plaintiff within 60 days, or by October 25, 2016. *See* Moore Decl., Ex. 1. The notice published by counsel in the *Abbas* action on September 1, 2016 advised putative class members of the pendency of the action, the claims asserted therein and the right to move the Court to be appointed as lead plaintiff within 60 days, or by October 31, 2016. *See* Moore Decl., Ex. 2. As this motion is being filed by October 25th, it is timely and Mr. Rudd is entitled to be considered for appointment as lead plaintiff.

**2. Mr. Rudd Has the Largest Financial Interest in the Relief Sought by the Class**

In cases alleging §14 violations, the "number of shares held" and eligible to be voted on or tendered in the merger is the primary factor courts consider "in gauging the movants' financial interest in the Section 14(a) claims." *In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*, 258 F.R.D. 260, 269 (S.D.N.Y. 2009); *Zucker v. Zoran Corp.*, 2006 U.S. Dist. LEXIS 93469, at *8-*9 (N.D. Cal. Dec. 11, 2006) ("the candidate with the largest potential recovery [is] the candidate [that] bought the largest number of . . . shares").

As evidenced by his PSLRA Certification, Mr. Rudd held 6,000 shares of Outerwall stock as of August 5, 2016 when the Offer commenced, which shares are valued at approximately $312,000 based upon the tender consideration. *See* Moore Decl., Ex. 3. To the best of his counsel's

STRITMATTER KESSLER WHELAN KOEHLER MOORE KAHLER
3600 15th Avenue West, Suite 300, Seattle, WA 98119
Telephone: 206/448-1777 • Fax: 206/728-2131

knowledge, there are no other plaintiffs with a larger financial interest.[5] Therefore, Mr. Rudd satisfies the PSLRA's prerequisite of having the largest financial interest.

### 3. Mr. Rudd Otherwise Satisfies Rule 23 of the Federal Rules of Civil Procedure

In addition to possessing a significant financial interest, a lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc). "On a motion to serve as Lead Plaintiff, 'the inquiry shall focus solely on the "typicality" and "adequacy" aspects of' Rule 23." *Frias v. Dendreon Corp.*, 835 F. Supp. 2d 1067, 1075 (W.D. Wash. 2011) (Robart, J.) (quoting *Cavanaugh*, 306 F.3d at 730 n.5, 732).

"'"Typicality" in the class action context is measured by whether the applicant's claims arise from the same event or course of conduct which gave rise to the claims of the class members, and are founded on the same legal theory.'" *Id.* (citation omitted). Mr. Rudd's claims in this action arise from the same events and alleged course of conduct as the other putative class members' claims and are founded on the same legal theories as the other putative class members.

To "'satisfy the FRCP 23 conditions of "adequacy," it must be demonstrated that: (1) the proposed lead plaintiff's interests are in common with, and not antagonistic to, those of the class; and (2) proposed lead plaintiff's counsel are qualified, experienced and generally able to conduct the litigation.'" *Id.* at 1076. Mr. Rudd is adequate to represent the putative class because his interests are aligned with those of the other putative class members and are not antagonistic in any way. As an investor in Outerwall stock at the time of the Offer, Mr. Rudd has an identity of interest with his fellow class members. Moreover, there are no facts suggesting that any actual or potential conflict of interest or other antagonism exists between Mr. Rudd and other putative class members. Finally,

---

[5] Plaintiff Abbas held 1,690 Outerwall shares. Dkt. No. 2. Plaintiff Baumgartner held 415.5 Outerwall shares. *See* Case No. 2:16-cv-01281, Dkt. No. 2. Plaintiff Filippov held 11 Outerwall shares. *See* Case No. 2:16-cv-01329, Dkt. No. 2. Plaintiff Mallinger held 5 Outerwall shares. *See* Case No. 2:16-cv-01316, Dkt. No. 2. Plaintiff Hunter's interest is unknown because he did not file the mandatory PSLRA certification with his complaint. *See* 15 U.S.C. §78u-4(a)(2) ("Each plaintiff seeking to serve as a representative party on behalf of a class ***shall*** provide a sworn certification, which shall be personally signed by such plaintiff and filed with the complaint . . . .") (emphasis added).

STRITMATTER KESSLER WHELAN KOEHLER MOORE KAHLER
3600 15th Avenue West, Suite 300, Seattle, WA 98119
Telephone: 206/448-1777 • Fax: 206/728-2131

as discussed below in §IV.C, Mr. Rudd's selection of an experienced law firm as counsel further demonstrates its adequacy to oversee this action as the lead plaintiff.

As such, the Court should find that Mr. Rudd satisfies the Rule 23 inquiry at this stage.

**C. The Court Should Approve Mr. Rudd's Selection of Counsel**

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to this Court's approval. *See* 15 U.S.C. §78u-4(a)(3)(B)(v); *Cohen*, 586 F. 3d 703. Mr. Rudd has selected Robbins Geller to serve as lead counsel.

Robbins Geller, a 200-lawyer firm with offices nationwide, regularly practices complex securities litigation. Moore Decl., Ex. 4. Courts throughout the country have noted Robbins Geller's reputation for excellence, which has resulted in the appointment of Robbins Geller attorneys to lead roles in hundreds of complex class action securities cases. *Id.*

Mr. Rudd's counsel is competent, experienced, and qualified to represent the interests of the plaintiff class. Accordingly, Robbins Geller should be appointed as Lead Counsel.

**V. CONCLUSION**

Mr. Rudd has satisfied each of the PSLRA's requirements for appointment as lead plaintiff pursuant to the PSLRA. As such, Mr. Rudd respectfully requests that the Court amend the Stipulation and Order Consolidating Related Cases (Dkt. No. 7), appoint him as Lead Plaintiff and approve his selection of counsel.

DATED: October 25, 2016

Respectfully submitted,

STRITMATTER KESSLER WHELAN
KOEHLER MOORE KAHLER
BRAD J. MOORE

s/ Brad J. Moore
BRAD J. MOORE, WSBA #21802

3600 15th Avenue West, Suite 300
Seattle, WA 98119-1330
Telephone: 206/448-1777
206/728-2131 (fax)

1199892_1

MOTION TO AMEND DKT. NO. 7 AND FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL (2:16-cv-01275-JLR)

STRITMATTER KESSLER WHELAN KOEHLER MOORE KAHLER
3600 15th Avenue West, Suite 300, Seattle, WA 98119
Telephone: 206/448-1777 • Fax: 206/728-2131

- 10 -

Local Counsel for Plaintiff

ROBBINS GELLER RUDMAN & DOWD LLP
DAVID T. WISSBROECKER
DANIELLE S. MYERS
655 West Broadway, Suite 1900
San Diego, CA 92101-8498
Telephone: 619/231-1058
619/231-7423 (fax)

[Proposed] Lead Counsel for Plaintiff

JOHNSON & WEAVER, LLP
W. SCOTT HOLLEMAN
99 Madison Avenue, 5th Floor
New York, NY 10016
Telephone: 212/802-1486
212/602-1592 (fax)

Additional Counsel for Plaintiff

1199892_1
MOTION TO AMEND DKT. NO. 7 AND FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL (2:16-cv-01275-JLR)

- 11 -

STRITMATTER KESSLER WHELAN KOEHLER MOORE KAHLER
3600 15th Avenue West, Suite 300, Seattle, WA 98119
Telephone: 206/448-1777 • Fax: 206/728-2131

**CERTIFICATION**

The undersigned makes the following declaration certified to be true under penalty of perjury pursuant to RCW 9A.72.085:

On the date given below, I hereby certify that I caused the foregoing to be filed using the United States District Court for Western District of Washington – Document Filing System (CM/ECF) and a true and correct copy to be delivered on the following in the manner indicated:

| | |
|---|---|
| Roger M. Townsend, WSBA # 25525<br>BRESKIN JOHNSON & TOWNSEND PLLC<br>1000 Second Avenue, Suite 3670<br>Seattle, WA 98104<br>rtownsend@bjtlegal.com<br>**Counsel for Syed Abbas** | ☒ CM/ECF<br>☐ U.S. Mail<br>☐ Fax<br>☐ Legal messenger<br>☐ Electronic Delivery |
| Richard A. Acocelli, admitted *pro hac vice*<br>WEISSLAW LLP<br>1500 Broadway, 16th Floor<br>New York, NY 10036<br>racocelli@weisslawllp.com<br>**Counsel for Syed Abbas**____________ | ☒ CM/ECF<br>☐ U.S. Mail<br>☐ Fax<br>☐ Legal messenger<br>☐ Electronic Delivery |
| Marc L. Ackerman, admitted *pro hac vice*<br>BRODSKY & SMITH, LLC<br>Two Bala Plaza, Suite 510<br>Bala Cynwyd, PA 19004<br>mackerman@brodsky-smith.com<br>**Counsel for Charles Baumgartner** | ☒ CM/ECF<br>☐ U.S. Mail<br>☐ Fax<br>☐ Legal messenger<br>☐ Electronic Delivery |
| Elizabeth K. Tripodi, admitted *pro hac vice*<br>LEVI & KORSINSKY LLP<br>1101 30th Street NW, Suite 115<br>Washington, DC 20007<br>etripodi@zlk.com<br>**Counsel for Edward T. Hunter** | ☒ CM/ECF<br>☐ U.S. Mail<br>☐ Fax<br>☐ Legal messenger<br>☐ Electronic Delivery |
| Stephen J. Oddo, admitted *pro hac vice*<br>ROBBINS ARROYO LLP<br>600 B Street, Suite 1900<br>San Diego, CA 92101<br>soddo@robbinsarroyo.com<br>**Counsel for Jesse Mallinger** | ☒ CM/ECF<br>☐ U.S. Mail<br>☐ Fax<br>☐ Legal messenger<br>☐ Electronic Delivery |
| Thomas J. McKenna, admitted *pro hac vice*<br>GAINEY McKENNA & EGLESTON<br>440 Park Avenue South, 5th Floor<br>New York, NY 10016<br>tjmckenna@gme-law.com<br>**Counsel for Dorothy Filippov** | ☒ CM/ECF<br>☐ U.S. Mail<br>☐ Fax<br>☐ Legal messenger<br>☐ Electronic Delivery |

| | |
|---|---|
| Ronald L. Berenstain, WSBA #7573<br>Sean C. Knowles, WSBA #39893<br>PERKINS COIE LLP<br>1201 Third Avenue, Suite 4900<br>Seattle, WA 98101<br>rberenstain@perkinscoie.com<br>sknowles@perkinscoie.com<br>**Counsel for Outerwall Inc, Jeffrey J. Brown, Nelson C. Chan, Nora M. Denzel, David M. Eskenazy, Ross G. Landsbaum, Erik E. Prusch, Robert D. Sznewajs** | ☒ CM/ECF<br>☐ U.S. Mail<br>☐ Fax<br>☐ Legal messenger<br>☐ Electronic Delivery |

s/ Patti Sims
Patti Sims, Paralegal