UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| IN RE OUTERWALL INC., ET AL. STOCKHOLDER LITIGATION | MASTER FILE NO. C16-1275JLR<br><br>ORDER ON MOTIONS TO APPOINT LEAD PLAINTIFF AND LEAD COUNSEL |

## I.   INTRODUCTION

Before the court are Movant Mark Rudd's motion to appoint lead plaintiff and counsel (Rudd Mot. (Dkt. # 9))[1] and Plaintiff Syed Abbas's motion to appoint lead plaintiff and counsel (Abbas Mot. (Dkt. # 13)).  The court has considered the motions, the submissions in opposition to and in support of the motions, the relevant portions of the

//

//

//

---

[1] Unless otherwise stated, all record citations in this order are to the docket in Case No. C16-1275JLR.

record, and the applicable law.  Being fully advised,[2] the court GRANTS Mr. Rudd's

motion and DENIES Mr. Abbas's motion for the reasons set forth below.

## II.    BACKGROUND

### A.    The Complaints

This putative class action arises from the planned acquisition and merger of

Defendant Outerwall, Inc. by affiliates of Apollo Global Management, LLC ("Apollo").

(Abbas Compl. (Dkt. # 1) ¶ 1.)[3]  Outerwall "delivers retail product and services to

consumers via self-service interactive kiosks."  (*Id.* ¶ 12.)  Apollo is a "global alternative

investment manager."  (*Id.* ¶ 21.)

On July 25, 2016, Outerwall and Apollo issued a joint press release announcing

their Agreement and Plan of Merger ("the Merger Agreement").  (*Id.* ¶ 2.)  The Merger

Agreement specified a tender offer to "purchase all of the outstanding shares of

Outerwall common stock for $52.00 in cash for each share of Outerwall stock [that a

stockholder] own[s]."  (*Id.* ¶ 2.)  The offer commenced on August 5, 2016, and ended on

September 1, 2016.  (*Id.*)

//

//

---

[2] Mr. Rudd and Mr. Abbas requested oral argument on their motions.  (*See* Rudd Mot. at 1; Abbas Mot. at 1.)  However, the court determines that oral argument would not be helpful to its disposition of the motions.  Local Rules W.D. Wash. LCR 7(b)(4).

[3] The court cites Mr. Abbas's complaint because it is the first-filed complaint in this consolidated action and contains allegations that do not materially differ from those in the four later-filed cases.  *Compare* Abbas Compl., *with Baumgartner v. Outerwall Inc., et al.*, No. C16-1281JLR, Dkt. # 1; *Hunter v. Outerwall, Inc., et al.*, No. C16-1285JLR, Dkt. # 1; *Mallinger v. Outerwall, Inc., et al.*, No. C16-1316JLR, Dkt. # 1; *Filippov v. Outerwall, Inc., et al.*, No. C16-1329JLR, Dkt. # 1.

1    Shortly after Outerwall and Apollo announced the Merger Agreement, Plaintiffs

2    filed five putative class actions in this District.  (*See* Abbas Compl.); *Baumgartner*, No.

3    C16-1281JLR, Dkt. # 1; *Hunter*, No. C16-1285JLR, Dkt. # 1; *Mallinger*, No.

4    C16-1316JLR, Dkt. # 1; *Filippov*, No. C16-1329JLR, Dkt. # 1.  The initial case—which

5    Mr. Abbas filed—was assigned to the undersigned judge, and the four later-filed cases

6    were transferred to the undersigned judge and subsequently consolidated.  (*See* 9/28/16

7    Order (Dkt. # 7).)

8    Plaintiffs allege that the transaction was the product of "an unfair process

9    stemming not from the Board's concern for the best interests of stockholders, but rather

10   from the Board's desire to avoid a proxy contest with an activist investor and potential

11   ouster from their positions."  (Abbas Compl. ¶ 3.)   Plaintiffs further allege that Outerwall

12   and Apollo announced the transaction "just as [Outerwall] began to enjoy the results of

13   initiatives to improve its financial results."  (*Id.* ¶ 4.)  Specifically, they assert that "as

14   recently as July 19, 2016, an analyst with B. Riley & Co. set a $58.00 per share price

15   target for the Company—a $6.00 premium to the Offer Price" of $52.00.  (*Id.*)

16   In addition, Plaintiffs allege that "the Board agreed to lock up the deal with [five]

17   coercive deal protective devices in the Merger Agreement," including (1) a

18   "no-solicitation clause" that prevented Outerwall from soliciting and providing

19   non-public information to alternate bidders; (2) an "information rights" provision that

20   required Outerwall to notify Apollo of any competing bidder and all material terms of

21   any competing bid; (3) "matching rights" that gave Apollo three business days to match

22   any better offer Outerwall received as well as two business days after a material

1    amendment is made to the terms and conditions of a competing offer or a newly

2    submitted offer; (4) a "non-waiver" provision that restricted Outerwall from modifying or

3    terminating any material provision of a confidentiality agreement to which Outerwall or

4    its subsidiaries are a party; and (5) a provision that required Outerwall to pay Apollo

5    $26.9 million if Outerwall pursued a competing bid.  (*Id.* ¶ 5.)  Finally, Plaintiffs allege

6    that the Schedule 14D-9 that Outerwall filed with the Securities and Exchange

7    Commission ("the SEC") on August 5, 2016, omitted material information or contained

8    material misrepresentations.  (*Id.* ¶ 6.)

9          Plaintiffs bring this putative class action on behalf of Outerwall's public

10   stockholders for violations of Sections 14(e), 14(d)(4), and 20(a) of the Securities

11   Exchange Act of 1934 ("the Act"), for breach of fiduciary duty, to enjoin a vote on the

12   planned transaction, to rescind the transaction, and to recover damages and/or fees and

13   costs.  (*See* Abbas Compl. ¶ 1); *see also Filippov*, No. C16-1329JLR, Dkt. # 1 ¶ 70

14   (asserting a violation of Section 14(d)(4)); *Hunter*, No. C16-1285JLR, Dkt. # 1 ¶ 74

15   (alleging breach of fiduciary duty); *Mallinger*, No. C16-1316JLR, Dkt. # 1 ¶ 84 (same).

16   Plaintiffs bring suit "on behalf of all persons and entities that own Outerwall common

17   stock" (Abbas Compl. ¶ 26) for the period of the tender offer (*id.* ¶ 2).

18   **B.    The Motions**

19         On October 25, 2016, Mr. Rudd filed a motion for appointment as lead plaintiff

20   and for approval of his selection of counsel pursuant to the Private Securities Litigation

21   //

22   //

1    Reform Act ("the PSLRA").[4]  (Rudd Mot.)  Mr. Rudd also moves the court to amend its

2    September 28, 2016, order to reflect his choice of counsel if he is selected as lead

3    plaintiff.  (*Id.* at 2-3; *see also* 9/28/16 Order ¶¶ 6-7.)  Mr. Rudd contends that he should

4    be appointed lead plaintiff because he timely filed his motion, has the largest financial

5    interest—6,000 shares of Outerwall common stock—in the relief sought by the class, and

6    otherwise satisfies the requirements of Federal Rule of Civil Procedure 23.  (*Id.* at 9-10.)

7    If selected as lead plaintiff, Mr. Rudd seeks the court's approval of Robbins Geller

8    Rudman & Dowd LLP ("Robbins Geller") as lead counsel.  (*Id.* at 11.)

9           Six days later, on October 31, 2016, Mr. Abbas moved for appointment as lead

10   plaintiff and for approval of his selection of counsel pursuant to the PSLRA.  (Abbas

11   Mot.)  Mr. Abbas contends that he should be appointed lead plaintiff because on

12   September 16, 2016, Mr. Abbas entered into a Memorandum of Understanding ("the

13   MOU") with Defendants that allowed Mr. Abbas access to "material information" and

14   "provides the framework for a potential settlement of the [consolidated] Actions."  (*Id.* at

15   7-8.)  Mr. Abbas argues that "he is the only movant who already has, and will continue

16   to, fairly and adequately protect the interests of the Class."  (*Id.* at 9.)  Even though Mr.

17   Abbas owns only 1,690 shares (Abbas Cert. (Dkt. # 2) ¶ 4),[5] Mr. Abbas contends that

18

19   _____

20          [4] The PSLRA permits "a class member who is not individually named as a plaintiff in the
     complaint or complaints" to move for appointment as lead plaintiff.  15 U.S.C.
     § 78u-4(a)(3)(B)(i).

21
            [5] Despite owning significantly fewer shares than Mr. Rudd, Mr. Abbas states that he
22   "believes that he has the largest financial interest in the litigation of any adequate plaintiff under
     Rule 23, and no other movant has a significantly larger financial interest."  (Abbas Mot. at 11.)

1     "the presumption that the movant with the largest financial interest is the most adequate

2     plaintiff is rebuttable" (*id.* at 10 (emphasis omitted)).  Mr. Abbas asks the court to

3     approve his choice of WeissLaw LLP ("WeissLaw") as lead counsel and Breskin Johnson

4     & Townsend PLLC ("Breskin Johnson") as liaison counsel, if the court appoints Mr.

5     Abbas lead plaintiff.  (*Id.* at 17.)

6     **III.     ANALYSIS**

7     **A.     Appointment of Lead Plaintiff Under the PSLRA**

8          The PSLRA "instructs district courts to select as lead plaintiff the one 'most

9     capable of adequately representing the interests of class members.'"  *In re Cavanaugh*,

10    306 F.3d 726, 729 (9th Cir. 2002) (quoting 15 U.S.C. § 78u-4(a)(3)(B)(i)).  The

11    presumptively most adequate plaintiff is the plaintiff who has the greatest financial stake

12    in the outcome of the case and meets the requirements of Federal Rule of Civil Procedure

13    23.  *See id.*  The Ninth Circuit holds that the PSLRA provides a three-step process for

14    identifying the lead plaintiff.  *Id.*  "The first step consists of publicizing the pendency of

15    the action, the claims made[,] and the purported class."  *Id.*

16         "In step two, the district court must consider the losses allegedly suffered by the

17    various plaintiffs before selecting as the 'presumptively most adequate plaintiff'—and

18    hence the presumptive lead plaintiff—the one who 'has the largest financial interest in

19    the relief sought by the class' and 'otherwise satisfies the requirements of Rule 23 of the

20    Federal Rules of Civil Procedure.'"  *Cavanaugh*, 306 F.3d at 729-30.  In engaging in

21    these inquiries, "the district court must compare the financial stakes of the various

22    plaintiffs and determine which one has the most to gain from the lawsuit."  *Id.* at 730.

1   The court "then focus[es] its attention on that plaintiff" and determines "based on the

2   information he has provided in his pleadings and declarations, whether he satisfies the

3   requirements of Rule 23(a), in particular those of 'typicality' and 'adequacy.'"  *Id.*

4        At the third step, the court gives "other plaintiffs an opportunity to rebut the

5   presumptive lead plaintiff's showing that it satisfies Rule 23's typicality and adequacy

6   requirements."  *Id.*

7        1.   Mr. Rudd's Motion for Appointment as Lead Plaintiff

8            *a.   Timely Notice and Motion for Appointment*

9        The plaintiff who filed the first lawsuit must publish notice of the complaint in a

10  widely circulated business publication within 20 days of filing the complaint.  15 U.S.C.

11  § 78u-4(a)(3)(A)(l).  In addition, all proposed lead plaintiffs must submit a sworn

12  certification setting forth certain facts to demonstrate to the court that the plaintiff has

13  suffered more than a nominal loss, is not a professional litigant, and is otherwise

14  interested and capable of serving as a class representative.  15 U.S.C. § 78u-4(a)(2)(A).

15       Mr. Abbas was the first plaintiff to file suit, and he published notice in *PR*

16  *Newswire* on September 1, 2016, within 20 days of filing suit.[6]  (*See* Townsend Decl.

17  ISO Abbas Mot. (Dkt. # 14) ¶ 2, Ex. A ("Abbas Notice").)  Mr. Rudd filed his motion on

18  October 25, 2016, within 60 days of Mr. Abbas's notice.  In addition, Mr. Rudd filed the

19

20  ──────────────

    [6] Plaintiff Jesse Mallinger filed a notice in *Business Wire* on August 26, 2016.  (*See*
21  Moore Decl. (Dkt. # 10) ¶ 2, Ex. 1.)  However, Mr. Mallinger was not the first plaintiff to file
    suit.  *Compare Abbas*, No. C16-1275JLR, Dkt. # 1 (showing that Mr. Abbas filed his lawsuit on
22  August 12, 2016), *with Mallinger*, No. C16-1316JLR, Dkt. # 1 (showing that Mr. Mallinger filed
    his lawsuit on August 19, 2016).

1    required certification.  (*See* Moore Decl. (Dkt. # 10), Ex. 3 ("Rudd Cert.") ¶ 4.)

2    Accordingly, the timing of Mr. Abba's notice and of Mr. Rudd's motion and certification

3    satisfy this step of the lead plaintiff appointment inquiry.  *See Cavanaugh*, 306 F.3d at

4    729.

5                    b.  *Presumptively Most Adequate Plaintiff*

6                        i.   Largest Financial Interest

7            In step two of the analysis, the court determines which movant has the largest

8    financial interest in the litigation.  *See Cavanaugh*, 306 F.3d at 730.  In making this

9    determination, "the court may select accounting methods that are both rational and

10   consistently applied."  *Id.* at 730 n.4.  Courts usually consider four factors:  (1) total

11   shares purchased, (2) net shares purchased, (3) net funds expended, and (4) approximate

12   loss suffered.  *See Frias v. Dendreon Corp.*, 835 F. Supp. 2d 1067, 1075 (W.D. Wash.

13   2011); *see also In re Solar City Corp. Sec. Litig.*, No. 16-CV-04686-LHK, 2017 WL

14   363274, at *4 (N.D. Cal. Jan. 25, 2017) (In some instances, courts "equate financial

15   interest with actual economic losses suffered.").  In cases involving Section 14(a) and

16   20(a) claims, "the candidate with the largest potential recovery [is] the candidate who

17   ha[s] bought the largest number of . . . shares."  *Zucker v. Zoran Corp.*, No. C 06-04843

18   WHA, 2006 WL 3591156, at *3 (N.D. Cal. Dec. 11, 2006).  Notably, the PSLRA

19   "provides no occasion for comparing plaintiffs with each other on any basis other than

20   their financial stake in the case."  *Cavanaugh*, 306 F.3d at 732.  Once the court identifies

21   the plaintiff with the largest financial interest in the litigation, the court's inquiry "must

22   //

1  focus on that plaintiff alone" and is "limited to determining whether he satisfies the other

2  statutory requirements." *Id.*

3          Mr. Rudd contends that he has the largest financial interest because he held 6,000

4  shares of Outerwall common stock at the time of the tender offer.  (*See* Rudd Cert. ¶ 4.)

5  Mr. Rudd contends that those shares were valued at approximately $312,000.00 based

6  upon the tender offer.  (Rudd Mot. at 9.)  Mr. Abbas does not dispute that Mr. Rudd has

7  the largest financial interest—Mr. Abbas owned only 1,200 shares of common stock at

8  the time of tender offer (Abbas Cert. ¶ 4)—and instead focuses on whether Mr. Rudd

9  meets the Rule 23 requirements (*see* Abbas Resp. at 12-16).[7]  Accordingly, the court

10  concludes that Mr. Rudd has the largest financial interest.  *See Cavanaugh*, 306 F.3d at

11  730.  The court now analyzes whether Mr. Rudd meets Rule 23's requirements, focusing

12  particularly on the typicality and adequacy factors.  *See id.*

13          ii.  Federal Rule of Civil Procedure 23 Requirements

14          Rule 23 requires numerosity, commonality, typicality, and adequacy as

15  prerequisites to bringing a class action.  *See* Fed. R. Civ. P. 23(a)(1)-(4).  On a motion to

16  appoint a lead plaintiff, the court focuses solely on the typicality and adequacy

17  requirements.  *Frias*, 835 F. Supp. 2d at 1075 (citing *Cavanaugh*, 306 F.3d at 730 n.5).

18

19         [7] Mr. Abbas concedes that Mr. Rudd "holds nominally more shares than [Mr.] Abbas," but nevertheless contends that Mr. Rudd is otherwise inadequate to serve as lead plaintiff.

20  (Abbas Resp. at 12.)  The court disagrees with Mr. Abbas's characterization that Mr. Rudd "holds nominally more shares."  Mr. Rudd certifies that at the time of the tender offer, he held 6,000 shares (Rudd Cert. ¶ 4), while Mr. Abbas certifies that he held 1,200 shares (Abbas Cert.

21  ¶ 4).  In addition, even if Mr. Rudd's shares were only nominally greater in number than Mr. Abbas's, *Cavanaugh* nevertheless directs the court to conclude that Mr. Rudd holds the largest

22  financial interest in this litigation.  *See Cavanaugh*, 306 F.3d at 729-30.

1    The court's "Rule 23 inquiry is not as searching as it would be on a motion for class

2    certification." *Schriver v. Impac Mortg. Holdings, Inc.*, No. SACV 06-31 CJC (RNBx),

3    2006 WL 6886020, at *5 (C.D. Cal. May 2, 2006). "[T]he prospective lead plaintiff need

4    only make a prima facie showing that it meets the typicality and adequacy factors." *Id.*

5         In addressing the typicality requirement, the court analyzes "whether other

6    members have the same or similar injury, whether the action is based on conduct which is

7    not unique to the named plaintiffs, and whether other class members have been injured by

8    the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir.

9    1992). Typicality is generally shown "when each class member's claim arises from the

10   same course of events, and each class member makes similar legal arguments to prove

11   the defendants' liability." *Rodriguez v. Hayes*, 591 F.3d 1105, 1122 (9th Cir. 2010).

12        Here, Mr. Rudd asserts that the proposed merger resulted from an unfair process,

13   specifically identifying five "coercive deal protection devices in the Merger Agreement."

14   (Rudd Mot. at 4-5.) Mr. Rudd also contends that Outerwall violated Sections 14 and

15   20(a) of the Act when on August 5, 2016, Outerwall filed with the SEC a

16   Solicitation/Recommendation Statement on Schedule 14D-9 that omitted or

17   misrepresented certain material information. (*Id.* at 5-6.) Mr. Rudd therefore alleges

18   injuries similar to those of the other putative class members. *See Hanon*, 976 F.2d at 508.

19   Mr. Rudd's claims also arise from the same events and conduct—the events leading up to

20   the proposed merger, the announcement of the merger, and the tender offer—as the other

21   putative class members' claims. (*Compare* Rudd Mot. at 4-7, *with* Abbas Compl. ¶¶ 2-7,

22   33-96); *Rodriguez*, 591 F.3d at 1122. In addition, it appears to the court that Mr. Rudd

1    bases his claims on the same legal theories that the other putative class members base

2    their claims.  (*Compare* Rudd Mot. at 4-7, 10, *with* Abbas Compl. ¶¶ 33-106); *Rodriguez*,

3    591 F.3d at 1122.  For these reasons, Mr. Rudd makes a prima facie showing that he

4    satisfies the typicality requirement.

5         A lead plaintiff is adequate if the plaintiff does not have any conflicts of interest

6    with other putative class members and the plaintiff and his counsel will vigorously

7    litigate on the class's behalf.  *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th

8    Cir. 1998); *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003).  The adequacy

9    requirement is also met "when counsel for the class is qualified and competent, the

10   representative's interests are not antagonistic to the interests of absent class members,

11   and it is unlikely that the action is collusive."  *Tanne v. Autobytel, Inc.*, 226 F.R.D. 659,

12   667 (C.D. Cal. 2005) (citing *In re N. Dist. of Cal., Dalkon Shield IUD Prods. Liab. Litig.*,

13   693 F.2d 847, 855 (9th Cir. 1982)).

14        Mr. Rudd also meets the adequacy requirement.  First, he does not appear to have

15   any conflicts of interest with other putative class members.  (*See, e.g.*, Rudd Cert. ¶ 6

16   (stating that Mr. Rudd "will not accept any payment for serving as a representative party

17   beyond Proposed Lead Plaintiff's pro-rata share of any recovery, except reasonable costs

18   and expenses").)  Mr. Rudd and his proposed counsel will also vigorously conduct the

19   litigation, which Mr. Rudd demonstrates by certifying that he "is willing to serve as a

20   representative party on behalf of the class, including testifying at deposition or trial."

21   (Rudd Cert. ¶ 3.)  Because Mr. Rudd alleges the greatest financial loss from the merger,

22   the court concludes that he will be a vigorous advocate on the putative class's behalf.  *See*

ORDER - 11

1    *Tanne*, 226 F.R.D. at 668 (stating that the movant was "an 'adequate' plaintiff because he

2    has suffered the greatest financial loss, ensuring vigorous advocacy").  In addition, there

3    is no evidence before the court that Mr. Rudd has engaged in collusion, and Mr. Rudd has

4    retained experienced and qualified counsel.  (*See, e.g.*, Moore Decl. ¶ 2, Ex. 4 ("Robbins

5    Geller Resume") (describing the qualifications of Mr. Rudd's proposed counsel, Robbins

6    Geller.)  For these reasons, Mr. Rudd makes a prima facie showing that he satisfies Rule

7    23's adequacy requirement.

8         Because Mr. Rudd has the largest financial interest in this litigation and makes a

9    prima facie showing of the Rule 23 requirements, the court concludes that he is the

10   presumptively most adequate plaintiff.

11        2.  Rebutting Mr. Rudd's Status as the Most Adequate Plaintiff

12        Mr. Abbas seeks to rebut the presumption that Mr. Rudd is the most adequate

13   plaintiff.  (*See* Abbas Resp.)  A purported class member may rebut the presumption of

14   adequacy only upon proof that the presumptively most adequate plaintiff will not fairly

15   and adequately protect the interests of the class or is subject to unique defenses that make

16   the plaintiff incapable of adequately representing the class.  15 U.S.C.

17   § 78u-4(a)(3)(B)(iii)(II)(aa)-(bb).  "At this stage, the process turns adversarial, and other

18   plaintiffs may present proof that disputes the presumptively most adequate plaintiff's

19   prima facie showing of typicality and adequacy."  *Niederklein v. PCS EdventuresA.com,*

20   *Inc.*, No. 1:10-cv-00479-EJL-CWD, 2011 WL 759553, at *9 (D. Idaho Feb. 24, 2011)

21   (citing *Cavanaugh*, 306 F.3d at 730.)

22   *//*

ORDER - 12

1          i.   Appointment Prior to Expiration of 60-Day Period

2          Mr. Abbas's first set of arguments attempting to rebut the presumption that Mr.

3   Rudd is the most adequate lead plaintiff is less than clear.  (*See* Resp. at 10-11.)  Mr.

4   Abbas appears to argue that (1) the court appointed him lead plaintiff at the time it

5   consolidated the actions, and (2) nothing prevented Mr. Abbas from "entering into the

6   MOU regarding the claims asserted" before he moved for appointment as lead plaintiff.

7   (*See* Abbas Mot. at 9-10.)  The court addresses each of these preliminary arguments in

8   turn.

9          First, the court did not appoint Mr. Abbas lead plaintiff when it consolidated the

10   actions nor did any plaintiff seek such relief at the time of consolidation.  (*See* 9/28/16

11   Order; *see generally* Dkt.); 15 U.S.C. § 78u-4(a)(3)(B)(ii) (directing courts to "[a]s soon

12   as practicable . . . appoint the most adequate plaintiff as lead plaintiff for the consolidated

13   actions"); *see also Gluck v. CellStart Corp.*, 976 F. Supp. 542, 550 (N.D. Tex. 1997)

14   (noting that the PSLRA "promulgates a timetable" that requires the court to appoint a

15   lead plaintiff "as soon as practicable" after the court consolidates the actions).  Neither

16   Mr. Abbas nor any of the other plaintiffs in this matter requested appointment as lead

17   plaintiff at the time they stipulated to consolidation of the actions, and the court has not

18   yet appointed a lead plaintiff.[8]  (*See generally* 9/28/16 Order; Dkt.)

19   //

20

---

21          [8] The court's September 28, 2016, order on the parties' stipulated motion stated that
WeissLaw would serve as lead counsel and Breskin Johnson as liaison counsel.  (*See* 9/28/16
22   Order ¶¶ 6-7.)  However, the order did not—explicitly or implicitly—appoint a lead plaintiff.
(*See generally id.*)

1    As part of this argument, Mr. Abbas urges the court to follow *Wojno v. FirstMerit*

2  *Corporation*, No. 16-cv-0461BYP (N.D. Ohio).  In that case, Judge Benita Pearson

3  appointed a group of interim co-lead plaintiffs when she consolidated the actions

4  pursuant to a stipulated motion, *id.*, Dkt. # 46, and a putative class member later—but

5  within the PSLRA's 60-day period—moved to vacate that order and for appointment as

6  lead plaintiff, *id.*, Dkt. # 66.  Judge Pearson declined to vacate the court's earlier order

7  because she determined that "[i]t would not have been appropriate . . . for the Court to

8  delay appointing a class representative until the expiration of the cutoff for filing a lead

9  plaintiff motion." *Id.*, Dkt. # 73 at 7.  The court is unpersuaded, however, that it should

10  apply Judge Pearson's approach in *Wojno* here.  The court has not yet appointed a lead

11  plaintiff, so the court need not consider whether to vacate such an order.  (*See generally*

12  9/28/16 Order; Dkt.)  In addition, Mr. Abbas has not shown that Mr. Rudd moved for

13  appointment as lead plaintiff "at the eleventh hour" as Judge Pearson found the movant in

14  *FirstMerit* had.[9]  *FirstMerit*, Dkt. # 66, at 7.  Both Mr. Rudd and Mr. Abbas filed their

15  motions for appointment as lead plaintiff before the statutory 60-day period ended, and

16  the court concludes that it is appropriate to consider their motions.[10]

---

18  [9] Judge Pearson also found that even assuming the movant had been "entitled to the
presumption that he is the most adequate lead plaintiff, Plaintiffs have successfully rebutted the
19  presumption." *FirstMerit*, Dkt. # 73 at 7.  The court concludes that Mr. Abbas has not
successfully rebutted the presumption that Mr. Rudd is the most adequate lead plaintiff. *See
infra.*

20  [10] Moreover, although the court has not yet appointed a lead plaintiff, it may under
21  certain circumstances be appropriate for a court to re-open the lead plaintiff appointment process.
*See, e.g.*, *Reese v. Malone*, No. C08-1008MJP, 2015 WL 1526567, at *3 (W.D. Wash. Apr. 3,
22  2015); *In re Stec, Inc. Sec. Litig.*, SACV 09-01304-JVS (MLGx), 2013 WL 12129391, at *1
(C.D. Cal. May 23, 2013).

1    Second, Mr. Abbas also argues against Mr. Rudd's appointment based on the

2    MOU into which he entered with Defendants.  Mr. Abbas states that the MOU

3    contemplates an eventual settlement if Mr. Abbas and his counsel "determine that the

4    proposed settlement remains fair, adequate[,] and reasonable."  (*See* Resp. at 11; *see also*

5    2d Townsend Decl. (Dkt. # 17) ¶ 3, Ex. 2 ("Sched. 14D-9/A") at 6 ("The MOU

6    contemplates that the parties would enter into a stipulation of settlement.").)  For this

7    reason, he contends that "other district courts have issued orders permitting settlement

8    proceedings before a lead plaintiff has been appointed."  (Resp. at 11; *see also id.* at 11

9    n.3.)  Although that may be the case, neither Mr. Abbas nor any of the other plaintiffs

10   have sought to stay the proceedings or entered a stipulation of settlement for the court's

11   review.  (*See generally* Dkt.)  For these reasons, the fact that the court could permit

12   settlement proceedings before appointing a lead plaintiff is immaterial to the court's

13   consideration of the currently pending motions.

14        ii.  Adequacy

15        The court now addresses Mr. Abbas's contention that Mr. Rudd will not fairly and

16   adequately represent the class.  Mr. Abbas primarily argues that Mr. Rudd did not act as

17   quickly as Mr. Abbas in taking action to benefit the putative class before the tender offer

18   expired.  (*See* Abbas Resp. at 5, 12-14.)  Specifically, Mr. Abbas argues that Mr. Rudd

19   "waited a month after the Consolidation Stipulation was entered to file his motion for

20   lead plaintiff appointment."  (*Id.* at 14.)  Because the court consolidated the actions and

21   Mr. Rudd should have been aware of the MOU, Mr. Abbas contends that Mr. Rudd's

22   "lack of diligence" makes him inadequate.  (*Id.* at 14, n.5.)  Mr. Abbas further argues that

1   he is "uniquely qualified to serve" as lead plaintiff because "he is entitled to conduct

2   discovery to investigate whether there is liability for damages" under the MOU,

3   something that he contends other putative class members will not be able to do until they

4   first defeat a motion to dismiss.  (*Id.* at 8, 14, n.6.)

5          The court concludes that Mr. Abbas has not offered sufficient proof to rebut the

6   presumption on the basis of fairness and adequacy.  Mr. Abbas's arguments merely raise

7   the question of "whether another movant"—in this case, Mr. Abbas—"might do a better

8   job of protecting the interests of the class than the presumptive lead plaintiff."

9   *Cavanaugh*, 306 F.3d at 732, n.10.  But the appropriate question is not whether Mr.

10  Abbas was a better putative class representative leading up to Mr. Rudd's and Mr.

11  Abbas's respective motions.  *See id.*; *Tanne*, 226 F.R.D. at 669 (noting that the question

12  is not whether another movant will do a better job of protecting the class); *Solar City*,

13  2017 WL 363274, at *7 (citing *Cavanaugh* and declining to credit a movant's argument

14  that it would "be a better lead plaintiff" than the presumptively most adequate plaintiff).

15  Rather, Mr. Abbas "must prove" that Mr. Rudd will not be a fair and adequate lead

16  plaintiff going forward.  *See Cavanaugh*, 306 F.3d at 732, n.10 (citing *In re Cendant*

17  *Corp. Litig.*, 264 F.3d 201, 268 (3d Cir. 2001)).  Mr. Abbas has not met his burden of

18  proof here.

19         Mr. Abbas appears to understand that Ninth Circuit precedent precludes his

20  arguments because he cites almost exclusively out-of-circuit authority, which he suggests

21  should lead the court to conclude that Mr. Abbas is the preferable lead plaintiff.  (*See*

22  Abbas Mot. at 12 (citing *Plumbers & Pipefitters Local 562 Pension Fund v. MGIC*, 256

F.R.D. 620, 623 (E.D. Wis. 2009)).)  For example, Mr. Abbas quotes an Eastern District of Wisconsin case in which the court stated the largest financial interest should be "based on whatever factors seem most appropriate under the facts of the case before it." *Plumbers & Pipefitters*, 256 F.R.D. at 623.  However, that approach to calculating the largest financial interest has no bearing on rebutting the presumptive lead plaintiff's ability to adequately and fairly represent the class, particularly in light of the Ninth Circuit's clear mandate in *Cavanaugh*.  As binding precedent on this court makes clear, it does not matter that Mr. Abbas might be a better lead plaintiff.  Rather, Mr. Abbas must affirmatively show that Mr. Rudd will not adequately and fairly protect the class's interests, and Mr. Abbas has not made that showing.

Indeed, courts in the Ninth Circuit have denied lead plaintiff status to plaintiffs who had already done considerable work on behalf of the putative class.  For example, in *In re Leapfrog Enterprises, Inc. Securities Litigation*, a group of plaintiffs had "filed a comprehensive amended complaint," "procured twenty-two document preservation subpoenas," and "developed an intimate knowledge of the case."  No. C-03-05421 RNW, 2005 WL 3801587, at *2 (N.D. Cal. Nov. 23, 2005).  They contested a plaintiff's appointment because they had "already conferred substantial benefits to the class through their vigorous prosecution of the case."  *Id.* (internal quotation marks omitted). Nevertheless, the court concluded that "*Cavanaugh* squarely holds that such peripheral issues cannot be the basis for elevating a particular plaintiff to lead status."  *Id.* (citing *Cavanaugh*, 306 F.3d at 732); *see also Smilovits v. First Solar, Inc.*, No. CV 12-0555 PHX DGC, 2012 WL 3002513, at *5 (D. Ariz. July 23, 2012) (concluding that various

1    factors that made one movant a "superior" lead plaintiff were irrelevant).  Because the

2    court concluded that another plaintiff had the largest financial stake in the litigation and

3    met Rule 23's typicality and adequacy requirements, the court appointed that plaintiff

4    lead status.  *Id.* at *4.

5         For these reasons, the court concludes that Mr. Abbas has not proved that Mr.

6    Rudd will not fairly or adequately represent the class.

7              iii. Unique Defenses

8         Mr. Abbas also contends that Mr. Rudd is subject to unique defenses that render

9    him inadequate.  Specifically, Mr. Abbas argues that Mr. Rudd will be subject to a laches

10   defense and a defense based on the fact that he may not have tendered his shares in the

11   tender offer.  (Abbas Mot. at 14 n.5, 16.)  In demonstrating that a presumptive lead

12   plaintiff is subject to a unique defense, the party opposing the presumptive lead plaintiff

13   need "only to show a degree of likelihood that a unique defense might play a significant

14   role at trial."  *In re CTI Biopharma Corp. Sec. Litig.*, No. C16-0216RSL, 2016 WL

15   7805876, at *2 (W.D. Wash. Sept. 2, 2016) (internal quotation marks omitted).  A

16   speculative defense "is insufficient to rebut the presumption" that the presumptively most

17   adequate plaintiff "satisfies the adequacy and typicality requirements."  *Cook v. Atossa

18   Genetics, Inc.*, No. C13-1836RSM, 2014 WL 585870, at *5 (W.D. Wash. Feb. 14, 2014).

19        The court finds Mr. Abbas's laches argument unpersuasive.  A laches defense rests

20   "on the maxim that 'one who seeks the help of a court of equity must not sleep on his

21   rights.'"  *AirWair Int'l Ltd. v. Schultz*, 84 F. Supp. 3d 943, 955 (N.D. Cal. 2015) (quoting

22   *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 835 (9th Cir. 2002)).  "To

1    prevail on a laches defense," a defendant must show that "the claimant unreasonably

2    delayed in filing suit based on when the claimant knew or should have known of the

3    allegedly infringing conduct" and "as a result of the delay, the defendant suffered

4    prejudice." *Id.* Mr. Abbas has not shown that it is likely that this defense "might play a

5    significant role at trial." *CTI Biopharma*, 2016 WL 7805876, at *2; (*see also* Abbas Mot.

6    at 14 n.5). The court cannot conclude based solely on Mr. Abbas's conclusory assertion

7    that Mr. Rudd unreasonably delayed filing suit after the events that gave rise to the

8    putative class claims or that this argument would be unique to Mr. Rudd. (*See* Abbas

9    Mot. at 14 n.5 (raising the laches issue in a footnote and providing no substantive

10   argument).) In addition, there is no indication in the record at this time that Defendants

11   have suffered prejudice from any delay on Mr. Rudd's part. (*See generally* Dkt.)

12        Mr. Abbas also argues that Mr. Rudd will be subject to a unique defense based on

13   the fact that he did not tender his shares. (Abbas Resp. at 16 ("It is unclear whether or

14   not [Mr.] Rudd tendered his shares in the Tender Offer, which would raise a unique

15   defense. . . .").) As an initial matter, Mr. Abbas does not provide any substantive

16   argument in support of his contention or state specifically why Mr. Rudd would be

17   uniquely subject to this defense. (*Id.* at 16.) In response, Mr. Rudd argues that this fact

18   is irrelevant and would not subject Mr. Rudd to a unique defense. (*See* Rudd Reply at 5

19   n.7 (quoting *Plaine v. McCabe*, 797 F.2d 713, 718 (9th Cir. 1986)).

20        The Ninth Circuit has held that "even a non-tendering shareholder may bring suit

21   for violation of [S]ection 14(e)" when the plaintiff shareholder otherwise alleges injury

22   "as a result of fraudulent activity in connection with a tender offer." *Plaine*, 797 F.2d at

1   718; *see also Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1003 (9th Cir. 2002)

2   (stating that outside of the non-insider trading context, "Section 14(e) can be understood

3   as protecting not only those who buy or sell stocks but also shareholders who decide not

4   to trade").  Without any additional context from Mr. Abbas about why Mr. Rudd does not

5   have standing as a non-tendering shareholder, *Plaine*'s holding appears to undermine Mr.

6   Abbas's argument that Mr. Rudd is subject to a unique defense based on his status as a

7   non-tendering shareholder.  In addition, nothing in the record indicates that this defense

8   would be unique to Mr. Rudd.  There may be a substantial number of putative class

9   members who are also subject to this defense.  *See In re Netflix, Inc. Sec. Litig.*, No.

10  12-0225 SC, 2012 WL 1496171, at *5 (N.D. Cal. Apr. 27, 2012) (citing *Hanon*, 976 F.2d

11  at 508-09) (stating that "[t]he point of the [unique defense] requirement is . . . to protect

12  the absent class members from the expense of litigating defenses applicable to lead

13  plaintiffs but not to the class as a whole").  Moreover, courts have routinely stated that a

14  plaintiff may properly be a lead plaintiff even when the plaintiff does not have standing

15  for every claim alleged on the class's behalf.  *See CTI Biopharma*, 2016 WL 7805876, at

16  *4 ("Potential standing issues with respect to certain claims do not preclude appointment

17  as lead plaintiff and can be resolved by the appointment of additional class

18  representatives as the litigation proceeds.").  For these reasons, Mr. Abbas has also failed

19  to demonstrate that unique defenses disqualify Mr. Rudd as an adequate lead plaintiff.

20  //

21  //

22  //

1     3. <u>Appointment of Co-Lead Plaintiffs</u>

2     In the alternative, Mr. Abbas requests that the court appoint Mr. Rudd and Mr.

3 Abbas co-lead plaintiffs. (Abbas Resp. at 16; Abbas Mot. at 16-17.) He urges the court

4 to appoint co-lead plaintiffs because Mr. Rudd "is the only other movant," "is not an

5 institutional investor," and "owns only slightly more shares" of Outerwall stock than Mr.

6 Abbas, and Mr. Abbas "has already demonstrated his commitment to protecting the rights

7 of the Class." (*Id.* at 16.) Mr. Abbas cites several authorities from outside of the Ninth

8 Circuit to support his contention that appointing co-lead plaintiffs is appropriate under the

9 circumstances of this case. (*See id.* (citing *In re Baan Co., Sec. Litig.*, 271 F. Supp. 2d 3,

10 13 (S.D.N.Y. 2002); *Dolan v. Axis Capital Holdings Ltd.*, No. 04CIV. 8564 (RJH), 2005

11 WL 883008, at *5-6 (S.D.N.Y. Apr. 13, 2005); *Piven v. Sykes Enters.*, 137 F. Supp. 2d

12 1295, 1303 (M.D. Fla. 2000)).)

13     District courts in the Ninth Circuit have declined to appoint co-lead plaintiffs

14 when the plaintiff seeking co-lead status has not shown that its appointment is necessary.

15 *See Tanne*, 226 F.R.D. at 673 (concluding that "the appointment of co-lead plaintiffs"

16 was not "preferable to the appointment of a single lead plaintiff in this case"); *Bodri v.*

17 *Gopro, Inc.*, No. 16-cv-00232-JST, 2016 WL 1718217, at *6 (N.D. Cal. Apr. 28, 2016)

18 (declining to appoint a co-lead plaintiff where the movant had not shown that it was

19 necessary "to represent the interests of options purchasers"); *see also Hodges v.*

20 *Immersion Corp.*, No. C-09-4073 MMC, 2009 WL 5125917, at *4 n.5 (N.D. Cal. Dec.

21 21, 2009) (stating that even though there may be situations where a district court should

22 appoint co-lead plaintiffs who have no preexisting relationship, such a situation was not

present); *Weisz v. Calpine Corp.*, No. 4:02-CV-1200, 2002 WL 32818827, at *3 n.3 (N.D. Cal. Aug. 19, 2002) (declining to appoint a co-lead plaintiff and stating that the matter of a subclass could be addressed upon class certification).

On the other hand, district courts have appointed co-lead plaintiffs where it is necessary to ensure that all plaintiffs are adequately represented. *See In re MGM Mirage Sec. Litig.*, No. 2:09-cv-01558-GMN-LRL, 2010 WL 4316754, at *5 (D. Nev. Oct. 25, 2010) (appointing co-lead counsel to ensure that all plaintiffs—both common stock purchasers and debt securities purchasers—"are adequately represented"). The case law therefore suggests that the decision whether to appoint a co-lead plaintiff often turns on the existence of disparate sub-groups of plaintiffs in the putative class. But where the presumptively most adequate plaintiff acting alone will adequately represent the class, a co-lead plaintiff is unnecessary.[11] *See Bodri*, 2016 WL 1718217, at *6 (stating that serving as a lead plaintiff is not the same as serving as a class representative and that additional named plaintiffs may later be added to the action to represent specific subclasses of plaintiffs).

The court concludes that Mr. Abbas has not shown that it is necessary in this case to appoint co-lead plaintiffs. The cases Mr. Abbas cites in his favor on this point

//

---

[11] In addition, the Ninth Circuit has stated in dicta that the PSLRA "suggest[s] that the district court should appoint only one lead plaintiff" and that appointing more than one lead plaintiff "would . . . tend to run counter to the sequential inquiry" under *Cavanaugh*. *Cohen v. U.S. Dist. Court for the N. Dist. of Cal.*, 586 F.3d 703, 711 n.4 (9th Cir. 2009); *but see In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 47 (S.D.N.Y. 1998) ("[T]he plain language of the PSLRA expressly contemplates the appointment of more than one lead plaintiff . . . .").

1   "predate *Cavanaugh*" or "are from jurisdictions outside the Ninth Circuit."[12]  *Tanne*, 226

2   F.R.D. at 673.  Accordingly, "[t]he rationales [he] offer[s] for the appointment of co-lead

3   plaintiffs . . . appear to be fundamentally at odds with *Cavanaugh*'s interpretation of the

4   PSLRA and its outlining of the process to be used in identifying a lead plaintiff."  *Id.*  In

5   addition, as the court discussed in detail above, Mr. Abbas has not shown that Mr. Rudd

6   will not adequately and fairly represent the class's interests.  *See supra* III.A.1.b.ii.

7   **B.    Approval of the Lead Plaintiff's Choice of Counsel**

8       The PSLRA provides that the most adequate plaintiff "shall, subject to the

9   approval of the court, select and retain counsel to represent the class."  15 U.S.C.

10  § 78u-4(a)(3)(B)(v).  If the lead plaintiff makes "a reasonable choice of counsel, the

11  district court should generally defer to that choice."  *Cohen*, 586 F.3d at 712.  A court

12  may reject the lead plaintiff's choice of counsel, but the court does not have "the

13  authority to select lead counsel of its own choosing."  *Id.* at 709.  The court therefore has

14  only "the limited power to accept or reject the lead plaintiff's selection."  *Id.*

15      Mr. Rudd has selected Robbins Geller as lead counsel and submitted the law

16  firm's resume to the court.  (Rudd Mot. at 11; Robbins Geller Resume.)  The court

17  concludes that Robbins Geller's resume indicates that the firm is well-qualified to serve

18  *//*

19  _____

20  [12] Once again, the court is unpersuaded by the non-binding precedent Mr. Abbas cites.
    *See, e.g.*, *Baan*, 271 F. Supp. 2d at 13 (stating that "[c]o-lead plaintiffs are particularly
    appropriate in a case such as this, in which it appears that there are two or more smaller investors
21  with roughly equal interests [and] no plaintiff with a significantly larger interest than all other
    plaintiffs" (internal quotation marks omitted)).  Even if the court were inclined to follow this
    case law, the court disagrees that Mr. Rudd and Mr. Abbas have "roughly equal interests" in
22  terms of their financial interest in this litigation.

1    as lead counsel, particularly because the firm has represented clients in dozens of class

2    action securities cases.  (*See* Robbins Geller Resume at 1-5.)  Accordingly, the court

3    approves Mr. Rudd's selection of Robbins Geller as lead counsel.[13]

4                                    **IV.    CONCLUSION**

5           For the reasons set forth above, the court GRANTS Mr. Rudd's motion for

6    appointment as lead plaintiff (Dkt. # 9), APPROVES his selection of Robbins Geller as

7    lead counsel (Dkt. # 9), and DENIES Mr. Abba's motion for appointment as lead plaintiff

8    and approval of his selection of lead counsel (Dkt. # 13).  In addition, the court ORDERS

9    the parties to file a joint status report that proposes a schedule for the filing of a

10   consolidated complaint, any motion to dismiss, and any motion for class certification no

11   later than seven (7) days after the entry of this order.

12          Dated this 6th day of March, 2017.

13

14

15          JAMES L. ROBART
            United States District Judge

16

17

18

19

20   _____

          [13] The court's approval of Mr. Rudd's choice of lead counsel therefore necessitates that
21   the court vacate paragraphs 6 and 7 of its September 28, 2016, order on consolidation, which
     stated that WeissLaw would serve as lead counsel and Breskin Johnson would serve as liaison
22   counsel.  (9/28/16 Order ¶¶ 6-7.)  The court does not, however, otherwise amend or vacate any
     other part of the September 28, 2016, order.  (*See generally id.*)